UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                            :
JAMES R. BOWEN,                                             :
                        Plaintiff,                          : 11 Civ. 4799 (JMF) (GWG)
                                                            :
         -v.-                                               : REPORT AND RECOMMENDATION
                                                            :
CAPT. ROBERT PATRICK, et al.,                               :
                                                            :
                        Defendants.                         :
                                                            :
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        Plaintiff James Bowen brings this action arising out of incidents that occurred during his

confinement at the Westchester County Jail (the "WCJ").  Bowen alleges federal and state

claims against Westchester County, New York Medical College ("NYMC"), and numerous

employees of Westchester County and NYMC.[1]  NYMC has moved to dismiss all claims against

it pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  The County Defendants have moved to

---

        [1] The parties collectively referred to as the "County Defendants" are: (1) Westchester
County, (2) Capt. Robert Patrick, (3) C.O. Pamela Williams, (4) Sgt. Alvin Rogers, (5) Sgt.
Anthony SanMarco, (6) C.O. Adrian Allen, (7) C.O. Joseph Colello, (8) C.O. Kent Green, (9)
C.O. Anthony Rosini, (10) Asst. Warden Charles Turner, (11) the John Doe defendants, (12) the
Emergency Response Team members, and (13) Dr. Randy Goldberg.

        [2] See Notice of Motion, filed Dec. 9, 2011 (Docket # 30); Declaration of Sarah L. Reid,
filed Dec. 9, 2011 (Docket # 31); Defendant New York Medical College's Memorandum of Law
in Support of Its Motion to Dismiss the First Amended Complaint, filed Dec. 9, 2011 (Docket
# 32) ("NYMC Mem.").  Bowen opposed NYMC's motion to dismiss.  See Declaration in
Opposition to New York Medical College's Motion to Dismiss the First Amended Complaint,
filed Mar. 5, 2012 (Docket # 40); Plaintiff's Memorandum of Law in Opposition to Defendant
New York Medical College's Motion to Dismiss the First Amended Complaint, filed Mar. 5,
2012 (Docket # 41) ("Pl. Mem. 2").  NYMC submitted a reply.  See Defendant New York
Medical College's Reply in Further Support of Its Motion to Dismiss the First Amended
Complaint, filed Mar. 19, 2012 (Docket # 42) ("NYMC Reply").

dismiss certain claims against them.[3]  For the reasons stated below, NYMC's motion should be granted in its entirety and the County Defendants' motion should be granted in part and denied in part.

I.      BACKGROUND

        A.      Facts

        The following facts are alleged in the first amended complaint and are assumed to be true for the purpose of this motion to dismiss.  See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002).[4]

                1.      Underlying Incident

        From December 29, 2008 to February 2, 2009, Bowen was incarcerated at the WCJ.  See First Amended Complaint, filed Nov. 21, 2011 (Docket # 29) ("Compl.") ¶ 9.  On December 29,

---

        [3] See Notice of Motion to Dismiss First Amended Complaint, filed Feb. 13, 2012 (Docket # 35); County Defendants' Memorandum of Law in Support of Their Motion to Dismiss the First Amended Complaint, filed Feb. 13, 2012 (Docket # 36) ("Cnty. Mem.").  Bowen opposed the County Defendants' motion to dismiss.  See Declaration in Opposition to Westchester County Defendants' Motion to Dismiss the First Amended Complaint, filed Mar. 5, 2012 (Docket # 37); Plaintiff's Memorandum of Law in Opposition to Westchester County Defendants' Motion to Dismiss the First Amended Complaint, filed Mar. 5, 2012 (Docket # 38) ("Pl. Mem. 1").  The County Defendants submitted a reply.  See County Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the First Amended Complaint, filed Mar. 19, 2012 (Docket # 43) ("Cnty. Reply").

        [4] In several paragraphs of the first amended complaint, plaintiff purports to "incorporate[] by reference" the complaints and/or "docket sheet[s]" in several other actions.  See Compl. ¶¶ 25, 28, 41–45.  The term "incorporate[] by reference" is ambiguous and without further explanation cannot be viewed as complying with Fed. R. Civ. P. 11(b)(3)'s requirement that plaintiff is in fact certifying that each and every paragraph of those complaints has the evidentiary support required under that section.  Additionally, the inclusion of each allegation of those pleadings would violate both Rule 8(a)(2)'s requirement of a "short and plain statement" of any claims and Fed. R. Civ. P. 12(f)'s prohibition of the inclusion of "immaterial" matter in a pleading.  Accordingly, we do not consider the allegations of the other complaints or the contents of the docket sheets in these other cases to form part of the amended complaint in this matter.

2008, in his dormitory area, Bowen "fell from the top mattress of a bunk bed, landed on his head and back, and sustained severe injuries thereto." Id. ¶ 49.  Defendant Pamela Williams, a correctional officer of the WCJ, id. ¶ 16, "signaled a code to summon emergency medical and corrections personnel," id. ¶ 49.  Defendants Robert Patrick, Alvin Rogers, Anthony SanMarco, Adrian Allen, Joseph Colello, Kent Green, Anthony Rosini, John Doe # 1, John Doe # 2, Emergency Response Team ("ERT") Members # 1 through # 8, and Dr. Randy Goldberg all responded to the call.  Id.  All were employees of the WCJ.[5]  Dr. Goldberg was also employed by defendant NYMC.  Id. ¶¶ 14–18.  Patrick was a captain at the WCJ, id. ¶ 14; Rogers and SanMarco were sergeants at the WCJ, id. ¶ 15; and Allen, Colello, Green, Rosini, the ERT members, and the John Doe defendants were correctional officers at the WCJ, id. ¶¶ 16–17.

When Patrick arrived, Williams told Patrick that "Mr. Bowen suffered a severe fall, hit his head, and needed medical attention, but [Williams] was directed by Patrick and other defendants to be quiet and sit down.  Williams complied."  Id. ¶ 50.  Dr. Goldberg was present during the exchange between Williams and Patrick, and was "capable of hearing Williams explain to Patrick the nature and mode [of] Mr. Bowen's severe injuries."  Id. ¶ 51.

Following the conversation between Williams and Patrick, "Patrick then applied a tactically contraindicated wrist hold on Mr. Bowen to maliciously inflict pain."  Id. ¶ 54.  Patrick asked Bowen whether something was wrong with him, but Bowen was unable to respond and moaned in pain instead.  Id.  Then, "Patrick maliciously inflicted additional pain by twisting Mr. Bowen's wrist again and stated, 'There's nothing wrong with you. Get your black ass up,' and

---

[5] Although the amended complaint does not allege that Dr. Goldberg was an employee of the WCJ, New York law "deem[s]" him a WCJ employee.  N.Y. Gen. Mun. Law § 50-d(1); see also Section III.E below.

repeatedly kicked Mr. Bowen in his injured back with a booted foot." Id.  Dr. Goldberg instructed an unknown person, "Make him sit up." Id. ¶ 55.  Bowen then "cr[ied] and plead[ed] for help, due to severe pain.  Patrick again stated, 'There's nothing wrong with you. Sit your black ass up,' and kicked Mr. Bowen again.  Mr. Bowen replied in tears, 'I can't,' as blood poured from his head." Id.  Dr. Goldberg, Williams, SanMarco, Rogers, Allen, Colello, Green, Rosini, the John Doe defendants, and the ERT members observed Patrick kicking Bowen, but did not intervene to stop or prevent such strikes in any way. Id. ¶¶ 60–61.  Williams made a record of the incident in the post logbook, wrote a "special report" about the incident, and completed an accident report of the incident. Id. ¶ 61.

Eventually, Bowen "was placed in a wheelchair and taken to the WCJ infirmary without immobilizing his head and neck." Id. ¶ 57.  "[T]he relevant emergency medical protocol for the type of head injury Mr. Bowen suffered is, in part, immediate immobilization of the head and neck, and a CT scan.  Neither were provided to Mr. Bowen." Id. ¶ 52.  Bowen subsequently returned to the infirmary multiple times and requested pain medication, but he never received any such medication. Id. ¶¶ 58, 68.  Bowen was also denied stitches to close a "severe" laceration on his head, an X-ray, an MRI, and "other diagnostic tests" for the injuries he sustained to his head and back. Id. ¶ 68.

The following day, defendant Charles Turner, an assistant warden of the WCJ, id. ¶ 13, reviewed the records of the incident made by Williams, id. ¶¶ 65–66.  Turner did not document, report, or investigate the incident further. Id. ¶ 66.  No defendant ever submitted accurate reports of the incident to the New York State Commission of Correction. Id. ¶ 64.  Turner also did not file disciplinary or criminal charges against any employee or agent of Westchester County. Id. ¶ 66.  Westchester County and NYMC also "have not disciplined, or disciplined

4

adequately, any employees or agents for use of excessive force or denial of medical care."  Id.
¶ 46.

Patrick certified that the Warden's Log truly and accurately described the incident, but
omitted his "personal misconduct" from the Warden's Log.  Id. ¶ 67.  The Warden's Log did not
"accurately reflect all personnel on duty" for the shift during which Patrick's physical
confrontation with Bowen occurred.  Id.

On some date after February 2, 2009, the New York State Department of Corrections
"determined that Mr. Bowen suffers from a herniated disc."  Id. ¶ 70.  "Patrick's deliberate and
malicious assault on Mr. Bowen exacerbated the injuries he sustained from the fall and caused
additional injuries and severe pain."  Id. ¶ 59.  Brown suffered the following injuries "[a]s a
direct and proximate result of the defendants' misconduct":

> a.  Violation of his rights as guaranteed by the Fourteenth Amendment to the U.S.
>     Constitution, the U.S. Code, and New York State law;
> b.  Physical injuries to his back and head;
> c.  Conscious and needless physical pain and suffering;
> d.  Permanent scarring;
> e.  Extreme emotional trauma and distress; and
> f.  Loss of economic opportunity.

Id. ¶ 72.

### 2.    Relationship of NYMC to the WCJ

Dr. Goldberg was present at the scene of the underlying incident and was an employee of
NYMC at the time.  See id. ¶¶ 18, 51, 55.  Westchester County had entered into a contract with
NYMC under which NYMC was "to provide primary medical care to inmates in the WCJ" and
to "creat[e] and implement[] Westchester County policies and procedures regarding the
provision of said medical care."  Id. ¶¶ 19–20.

Dr. Goldberg is a medical doctor whose duties as an employee of NYMC at the time of

the incident included "provid[ing] and supervis[ing] the medical care and treatment to inmates in custody of the WCJ." Id. ¶ 18.  His "job description did not require any knowledge of the civil rights of institutionalized persons to adequate medical care or treatment," and Dr. Goldberg did not receive any training as to the civil rights of such persons or as to "how to respond to the grossly negligent, reckless or intentional denial of medicare care to inmates." Id. ¶¶ 23–24.

        3.     Department of Justice Inspection

The United States Department of Justice ("DOJ") conducted an on-site inspection of the WCJ from February 25 to February 28, 2008.  Id. ¶ 30.  DOJ notified WCJ officials and legal counsel for Westchester County of its preliminary findings, which were subsequently conveyed to "policy level officials" of Westchester County and to NYMC, Dr. Goldberg, Turner, Rogers, SanMarco, and the ERT Members.  Id. ¶¶ 30, 31, 33.  The preliminary findings were substantially identical those contained in DOJ's findings letter, dated November 19, 2009, id. ¶ 32, which stated in part:

> We found that WCJ has a pattern of failing to: (1) adequately protect inmates from harm and serious risk of harm from staff; and (2) provide inmates with adequate medical and mental health care. These deficiencies violate WCJ inmates' constitutional rights.
>
> We found evidence of a pattern and practice of use of excessive force by the Emergency Response Team ("ERT").
>
> We found that WCJ inadequately reviews use of force incidents to prevent a pattern of use of excessive force against inmates.
>
> We find that WCJ fails to adequately document uses of force in its written reports, and thus fails to adequately protect inmates from harm.
>
> WCJ fails to maintain an adequate detainee grievance system, further contributing to the problems of monitoring and investigation of use of force incidents.
>
> WCJ fails to adequately discipline officers for using excessive force against inmates. . . . In our investigation, we found that WCJ fails to initiate disciplinary

measures to correct officers who use excessive force.

[T]here are some areas where the medical care provided at WCJ falls below the constitutionally required standards of care. Specifically, we found the following deficiencies: . . . an inadequate medical grievance process.

WCJ['s] policy for submitting grievances [] is not consistently implemented or effectively publicized. According to the Grievance Mechanism, CHS-A-11, inmate complaints must be written on an inmate Grievance Form and submitted to WCJ staff. During our on-site visit, however, many of the corrections officers in WCJ's housing units did not have Grievance Forms available for inmates if requested. Further, when inmates and jail staff were asked where an inmate could get a form to file a grievance, both the inmates and jail staff provided inconsistent responses.

Remedial Measures. In order to address the constitutional deficiencies identified above and protect the constitutional rights of detainees, the Jail should implement, at a minimum, the following measures in accordance with generally accepted professional standards of correctional practice:

> Develop and maintain comprehensive policies and procedures, consistent with current legal standards, regarding permissible use of force. Such policies and procedure [sic] should specifically include, inter alia, the following: (i) Definitions of force and excessive or unnecessary force. (iv) Prohibition on the use of force as punishment.

> Establish effective oversight of the use of force.

> Develop an effective and comprehensive training program in the appropriate use of force.

> Develop and implement policies, procedures, and practices to ensure inmates have access to an adequate grievance process that ensures that grievances are processed and legitimate grievances addressed and remedied in a timely manner, responses are documented and communicated to inmates, inmates need not confront staff prior to filing grievances about them, and inmates may file grievances confidentially.

> Ensure that grievance forms are available on all units.

> Ensure that inmate grievances are screened for allegations of staff misconduct and, if the incident or allegation meets established criteria, referred for investigation.

7

Ensure inmates have adequate access to health care.

Ensure that the medical request process for inmates is adequate and provides inmates with adequate access to medical care. This process should include logging, tracking, and timely responses by medical staff.

[DOJ] also would be willing to send our consultants' evaluations under separate cover.

Id. ¶ 34 (citations omitted) (ellipses and bracketing in original).  "Westchester County's custom and practice of use of excessive force and denial of medical care continues to date."  Id. ¶ 48.

II.   STANDARD OF REVIEW

A party may move to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) where the opposing party's complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  While a court must accept as true all of the allegations contained in a complaint, that principle does not apply to legal conclusions.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation, internal quotation marks, and brackets omitted).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Iqbal, 556 U.S. at 678 (citation omitted), and thus a court's first task is to disregard any conclusory statements in a complaint, id. at 679.

Next, a court must determine if the complaint contains "sufficient factual matter" which, if accepted as true, states a claim that is "plausible on its face."  Id. at 678 (citation and internal quotation marks omitted); accord Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) ("[A] complaint must allege facts that are not merely consistent with the

8

conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely "alleged" but not "'show[n]' . . . that the pleader is entitled to relief." Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

III.    DISCUSSION

The County Defendants move to dismiss the following claims asserted in Bowen's complaint: (1) claims that Turner, SanMarco, and Rogers violated 42 U.S.C. § 1983 by using excessive force against Bowen, see Cnty. Mem. at 4–5; (2) claims that SanMarco and Rogers violated § 1983 by conspiring to use excessive force against Bowen,[6] see id.; (3) the claim that Williams violated § 1983 by failing to intervene in the use of excessive force against Bowen, see id. at 5–6; (4) claims that Dr. Goldberg, Patrick, Rogers, SanMarco, Allen, Colello, Green, Rosini, and Williams violated § 1983 by acting with deliberate indifference to Bowen's serious medical needs, see id. at 6–7; and (5) claims of negligence, medical negligence, gross negligence, and negligent infliction of emotional distress against Dr. Goldberg, see id. at 12–13. NYMC moves to dismiss all remaining claims against it. See NYMC Mem. These are state law

─────────────

[6] Bowen voluntarily dismissed a conspiracy claim against Turner. See Notice of Voluntary Dismissal, filed Mar. 5, 2012 (Docket # 39) ("Voluntary Dismissal").

claims of negligence and gross negligence,[7] <u>see</u> Compl. ¶¶ 93–99; a respondeat superior claim

against NYMC for all torts committed by Dr. Goldberg, <u>see id.</u> ¶¶ 100–01; and a respondeat

superior claim for breach of contract against NYMC, <u>see id.</u> ¶¶ 102–04.[8]  We address each claim

in turn.

    A.    <u>Excessive Force Claims Against Turner, SanMarco, and Rogers</u>

Bowen has explicitly abandoned his claims of excessive force against SanMarco and

Rogers.  <u>See</u> Pl. Mem. 1 at 3.  Therefore, the excessive force claims as to SanMarco and Rogers

must be dismissed.

Similarly, Bowen has not responded to the arguments contained in defendants'

memorandum that Bowen's excessive force claim against Turner should be dismissed.  <u>See</u>

Cnty. Mem. at 3; Pl. Mem. 1.  Therefore, we consider Bowen's excessive force claim against

Turner to be abandoned.  <u>See</u> <u>Ortiz v. Standard & Poor's</u>, 2011 WL 4056901, at *1 n.2

(S.D.N.Y. Aug. 29, 2011).

    B.    <u>Conspiracy to Commit Excessive Force Claims Against SanMarco and Rogers</u>

Bowen asserts that SanMarco and Rogers violated 42 U.S.C. § 1983 by conspiring to use

excessive force against him.  <u>See</u> Compl. ¶¶ 74–77.  "To prove a § 1983 conspiracy, a plaintiff

must show: (1) an agreement between two or more state actors or between a state actor and a

---

[7] Although Count V is entitled "Pendent Claim for Negligence, Medical Negligence, Gross Negligence and Negligent Infliction of Emotional Distress Against NYMC and Goldberg," Bowen's pleading asserts allegations of negligent infliction of emotional distress only against Dr. Goldberg.  <u>See</u> Compl. ¶ 98.  Bowen does not deny NYMC's contention that Bowen has not set forth any allegations against NYMC for negligent infliction of emotional distress.  <u>See</u> NYMC Mem. at 15 n.7.

[8] Bowen voluntarily dismissed claims against NYMC under <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978), of excessive force and denial of medical care.  <u>See</u> Voluntary Dismissal.

private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." <u>Pangburn v. Culbertson</u>, 200 F.3d 67, 72 (2d Cir. 1999) (citing cases).

However, a plaintiff fails to state a § 1983 conspiracy claim "if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." <u>Herrmann v. Moore</u>, 576 F.2d 453, 459 (2d Cir.), <u>cert. denied</u>, 439 U.S. 1003 (1978). The same principle applies to a municipal entity, such as a county. <u>See</u>, <u>e.g.</u>, <u>Crews v. County of Nassau</u>, 2007 WL 4591325, at *12 (E.D.N.Y. Dec. 27, 2007). That is, "the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." <u>Id.</u> (citing cases). Bowen argues that this principle is inapplicable here because Dr. Goldberg is an employee of NYMC and not Westchester County. <u>See</u> Pl. Mem. 1 at 4. However, the identity of Dr. Goldberg's employer is irrelevant because Bowen did not allege that Dr. Goldberg participated in the conspiracy.[9] The relevant consideration is whether all alleged participants in the conspiracy were agents of the same municipal entity. The three persons who Bowen alleges participated in the conspiracy were Patrick, Rogers, and SanMarco, <u>see</u> Compl. ¶¶ 74–77; Voluntary Dismissal at 1, and all were employees of Westchester County, <u>see</u> Compl. ¶¶ 14–15.

An exception to the above principle exists when the plaintiff alleges facts showing that by engaging in the conspiracy the defendants were "pursuing personal interests wholly separate and apart from the entity." <u>Hartline v. Gallo</u>, 2006 WL 2850609, at *9 (E.D.N.Y. Sept. 30,

---

[9] Even had such an allegation been made, N.Y. Gen. Mun. Law § 50-d(1) would presumably render Dr. Goldberg an agent of Westchester County.

2006), rev'd on other grounds, 546 F.3d 95 (2d Cir. 2008) (internal quotation marks omitted);

accord Salgado v. City of New York, 2001 WL 290051, at *8 (S.D.N.Y. Mar. 26, 2001) (citing

cases); Roniger v. McCall, 22 F. Supp. 2d 156, 167–68 (S.D.N.Y. 1998).  Bowen argues that

Patrick carried out his alleged assault of Bowen in order to intimidate and coerce another inmate,

Anthony Dilworth – whom Patrick allegedly ordered to watch the assault – into waiving his legal

claims in a separate matter, Dilworth v. Goldberg, 10 Civ. 2224 (S.D.N.Y.).  See Pl. Mem. at

4–5.  Bowen argues that, therefore, Patrick, Rogers, and SanMarco's actions fell outside the

scope of their employment because they carried out their purported conspiracy pursuant to "an

independent motive in the beating of Mr. Bowen, to wit the coercion of Mr. Dilworth."  Id. at 5.

None of these allegations are actually made in the amended complaint, see id. at 4 (quoting from

pleading in Dilworth); see also Part I.A n.4 above, but the argument would fail even if they were.

The fact that Patrick's motivation for allegedly beating Bowen may have been unrelated to

Bowen himself does not mean the defendants were "pursuing personal interests wholly separate

and apart from" those of Westchester County.  Moreover, given that Westchester County is a

defendant in the Dilworth action, the dismissal of Dilworth's claims in that action would clearly

further the interests of Westchester County.  Because Bowen's allegations do not reflect that the

purported conspirators' actions furthered personal interests separate from those of Westchester

County, Bowen has failed to state claims of § 1983 conspiracy against SanMarco and Rogers.

      C.      Failure to Intervene Claim Against Williams

"It is widely recognized that all law enforcement officials have an affirmative duty to

intervene to protect the constitutional rights of citizens from infringement by other law

enforcement officers in their presence."  Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)

(citing cases).  A corrections officer who observes another officer applying excessive force to an

12

inmate is liable under § 1983 if the officer had a "realistic opportunity" to prevent the harm but failed to do so. Id. "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." Id. (citation omitted).

Bowen's complaint states that Williams "observed the entire incident" during which Patrick kicked Bowen and placed Bowen into wrist holds. Compl. ¶ 61. Williams "attempted to intervene on Mr. Bowen's behalf, but inadequately. Williams merely recorded the entire incident in the post logbook, wrote a special report regarding the incident, and completed an accident report for Mr. Bowen . . . ." Id. Because defendants do not argue that Bowen's complaint fails to state a claim of excessive force against Patrick, we assume without deciding for the purposes of this motion that Patrick's actions constituted excessive force. Defendants argue instead that Williams discharged her duty to prevent an unconstitutional harm by recording the incident in a logbook, writing a special report of the incident, and completing an accident report for Bowen. See Cnty. Mem. at 5–6.

Williams's duty, however, was to intervene to prevent harm from occurring if she had a realistic opportunity to do so – not merely to make a record of the incident after the fact. Because the application of excessive force was not an isolated incident but was repetitive and continuing – inasmuch as Patrick kicked Bowen "repeatedly" and twisted his wrists multiple times, Compl. ¶¶ 54–55, 60 – plaintiff is entitled to the inference that Williams had a realistic opportunity to intervene and prevent at least some acts underlying the excessive force claim. See Allen v. City of New York, 480 F. Supp. 2d 689, 695 (S.D.N.Y. 2007) (where one officer "repeatedly banged [plaintiff's] head against the wall, there was a reasonable opportunity for

13

[other officers] to intervene on [plaintiff's] behalf") (citing cases).  None of the actions defendants cite as discharging Williams's duty constitute acts of intervention – that is, acts calculated to prevent the ongoing incident from continuing.  The mere fact that Bowen's complaint characterizes Williams's actions as an "attempt[] to intervene on Bowen's behalf," Compl. ¶ 61, does not change the fact that the act of making a record of an incident of ongoing excessive force has neither the purpose nor effect of ending that application of force.

We also reject defendants' argument that Bowen did not adequately allege that Williams had a sufficiently culpable mental state.  See Cnty. Mem. at 6; Cnty. Reply at 4.  A corrections officer possesses the requisite mental state for liability if that officer "has reason to know . . . that excessive force is being used," Anderson, 17 F.3d at 557, which can be established by a showing that the officer observed the application of excessive force, id.  Bowen alleges that Williams "observed the entire incident."  Compl. ¶ 61.  Therefore, Bowen has sufficiently alleged that Williams had the requisite mental state.

Accordingly, defendants' motion to dismiss the failure to intervene claim against Williams should be denied.

> D.    Claims of Deliberate Indifference to Bowen's Medical Needs Against Goldberg
>        and the Correctional Officers

Bowen did not respond to the arguments contained in defendants' memorandum of law that the deliberate indifference claims against the correction officers should be dismissed.  See Cnty. Mem. at 6–7.  Bowen has only responded to the defendants' arguments that the claims against Dr. Goldberg should be dismissed.  See Pl. Mem. 1 at 6–8.  Therefore, we deem Bowen to have abandoned his deliberate indifference claims as to Patrick, Rogers, SanMarco, Allen, Colello, Green, Rosini, and Williams.  See Ortiz, 2011 WL 4056901, at *1 n.2.

14

As to Dr. Goldberg, a claim under § 1983 that the plaintiff received inadequate medical care as a pretrial detainee requires the plaintiff to demonstrate "deliberate indifference to [the inmate's] serious medical needs."  Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  Claims of deliberate indifference to medical needs require proof of both a subjective and objective component.  Id. (citation omitted).  The Second Circuit has explained:

> Subjectively, the official charged with deliberate indifference must act with a "sufficiently culpable state of mind."  See Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).  That is, the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). The objective component requires that "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists."  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted).

Id.  To establish that a prison official was deliberately indifferent toward an inmate's health, a plaintiff must demonstrate (1) that the plaintiff "had a serious medical condition" and (2) that the officer acted recklessly with respect to that condition.  Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009).  Therefore, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."  Farmer, 511 U.S. at 834.  "Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment."  Jordan v. Fischer, 773 F. Supp. 2d 255, 276 (N.D.N.Y. 2011) (citation omitted).

The Second Circuit has noted that:

"[d]eliberate indifference" describes a mental state more blameworthy than

15

> negligence; but a plaintiff is not required to show that the defendant acted for the
> "very purpose of causing harm or with knowledge that harm will result."  Farmer
> v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (citing
> Estelle, 429 U.S. at 104, 97 S. Ct. 285).  Deliberate indifference is "a state of
> mind that is the equivalent of criminal recklessness."  Hathaway v. Coughlin
> ("Hathaway II"), 99 F.3d 550, 553 (2d Cir. 1996).  A showing of medical
> malpractice is therefore insufficient to support an Eighth Amendment claim
> unless "the malpractice involves culpable recklessness, i.e., an act or a failure to
> act by the prison doctor that evinces 'a conscious disregard of a substantial risk of
> serious harm.'"  Chance, 143 F.3d at 703 (quoting Hathaway II, 99 F.3d at 553).

Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003), cert. denied, 543 U.S. 1093 (2005).

Bowen asserts that Dr. Goldberg acted with deliberate indifference to his medical needs.
See Pl. Mem. 1 at 6–8.  The substantive basis of this allegation is that Dr. Goldberg overheard
Williams state that Bowen "suffered a severe fall, hit his head, and needed medical attention,"
Compl. ¶¶ 50–51; that "the relevant emergency medical protocol for the type of head injury Mr.
Bowen suffered is, in part, immediate immobilization of the head and neck, and a CT scan," but
neither was provided to Bowen, id. ¶ 52; that Dr. Goldberg instructed an officer to make Bowen
sit up "in contravention [of] emergency medical protocol," Pl. Mem. 1 at 8; and that Dr.
Goldberg "denied Mr. Bowen pain medication for a prolonged period of time," id.[10]

While the amended complaint states that Bowen was denied pain medication from the
WCJ infirmary, it does not state that Dr. Goldberg denied him the pain medication.  See Compl.
¶ 58 ("Mr. Bowen returned to the WCJ infirmary multiple times seeking pain medication for his
extreme pain, but was denied same for the duration of his detention/incarceration in the WCJ.").
The amended complaint contains no allegation that Dr. Goldberg played any role in Bowen's

---

[10] Bowen also states that "Goldberg denied Mr. Bowen access to qualified emergency
medical personnel" and purports to quote paragraph 54 of his amended complaint.  Pl. Mem. 1 at
7.  However, this statement is not contained anywhere in his amended complaint.  Bowen made
this allegation at paragraph 54 of his original complaint, but omitted it from his amended
complaint.  Therefore, the Court disregards this assertion.

inability to receive pain medication.  Thus this fact is irrelevant.

The crux of Bowen's deliberate indifference claim therefore rests on allegations that Dr. Goldberg knew Bowen had just endured a "severe fall" and "hit his head;" that Dr. Goldberg instructed Bowen to sit up, notwithstanding the fact that the proper medical procedure was to immobilize Bowen's head and neck; and that Bowen was denied the opportunity to have his head and neck imaged.  These allegations do not sufficiently demonstrate that the head injuries Bowen sustained constituted a "serious medical condition."  While Bowen describes the head injuries he sustained as "severe," id. ¶¶ 3, 49, 68, and as creating "a serious medical need," id. ¶ 82, the amended complaint is otherwise bereft of any details describing the injuries that allegedly required immobilization and scanning.[11]  The conclusory characterization of Bowen's injuries as "severe" and "serious" do not satisfy the required pleading standard, as these allegations amount to mere "[t]hreadbare recitals of the elements of a cause of action" for deliberate indifference.  Iqbal, 556 U.S. at 678.

     E.    Claims of Negligence, "Medical Negligence," Gross Negligence, and Negligent Infliction of Emotional Distress Against Dr. Goldberg

Every municipality in New York State must "assume the liability" of any physician who treats persons "without receiving compensation from such person[s] in a public institution maintained in whole or in part by the municipal corporation . . . for damages for personal injuries alleged to have been sustained by such person[s] by reason of the malpractice of such . . .

---

[11] The only head or back injury that Bowen alleges in his complaint with any concreteness is "a severe laceration on his head."  Compl. ¶ 68.  Bowen notes that he was denied stitches to close the laceration.  Id.  Assuming arguendo that this injury were sufficiently harmful and that the pleading is sufficiently non-conclusory, Bowen nevertheless does not state who denied his request or whether the laceration in his head was an injury that required immobilization and scanning.  See id.  As Bowen makes no connection between Dr. Goldberg and his untreated laceration, this allegation is not relevant to the claim against Dr. Goldberg.

physician . . . while engaged in the rendition of such services." N.Y. Gen. Mun. Law § 50-d(1);

accord Pedrero v. Moreau, 81 N.Y.2d 731, 732 (1992). It is undisputed that Dr. Goldberg is a

physician who treated persons in a facility run by Westchester County and that Dr. Goldberg did

not receive compensation from his patients for his services. Under this statute, however, a suit

for damages for malpractice must be brought no later than one year and 90 days from the date of

accrual of the cause of action. See N.Y. Gen. Mun. Law § 50-i(1)(c); Castelli v. Nassau Cnty.

Med. Ctr., 244 A.D.2d 379, 379 (2d Dep't 1997) (dismissing medical malpractice claims against

the defendant physician and public hospital that were not brought within one year and 90 days of

the date of the injury). Bowen contends that the statute of limitations is inapplicable here

"because plaintiff has not asserted a claim for malpractice." Pl. Mem. 1 at 9.

        The Court rejects this argument. That Bowen stylized his claim against Dr. Goldberg as

one of "negligence" and "medical negligence" and not "medical malpractice" is not controlling.

Cf. Rodriguez v. Saal, 43 A.D.3d 272, 274–76 (1st Dep't 2007) (complaint's characterization of

claim as "medical malpractice" not controlling for where it in fact "sound[ed] in" ordinary

negligence). A plaintiff makes out a prima facie case for medical malpractice, as opposed to

ordinary negligence, where the plaintiff alleges "(1) [a] physician owed a duty of care to the

plaintiff; (2) the physician breached that duty by deviating from accepted medical practice; and

(3) the alleged deviation proximately caused plaintiff's injuries." Lorenz v. Managing Dir., St.

Luke's Hosp., 2010 WL 4922267, at *11 (S.D.N.Y. Nov. 5, 2010) (quoting Flemming v.

Velardi, 2003 WL 21756108, at *3 (S.D.N.Y. July 30, 2003)). A claim is for medical

malpractice, rather than ordinary negligence, if the alleged injury is "substantially related to

medical diagnosis and treatment." Abascal v. State, 93 A.D.3d 1216, 1217 (4th Dep't 2012)

("Because the claim substantially related to medical diagnosis and treatment, the action it gives

18

rise to is by definition one for medical malpractice rather than for simple negligence." (internal

quotation marks omitted)) (quoting McDonald v. State, 13 A.D.3d 1199, 1200 (4th Dep't 2004)).

"The distinction between ordinary negligence and malpractice turns on whether the acts or

omissions complained of involve a matter of medical science or art requiring special skills not

ordinarily possessed by lay persons or whether the conduct complained of can instead be

assessed on the basis of the common everyday experience of the trier of facts."  Russo v. Shah,

278 A.D.2d 474, 475 (2d Dep't 2000) (citing cases).

  As to Bowen's claims of negligence, "medical negligence," and gross negligence, Bowen

alleges that Dr. Goldberg "owed a statutory and common law duty of reasonable care to

petitioner, and Goldberg failed to exercise reasonable care in the exercise of his duties."  Compl.

¶ 96.  The substantive basis for these claims is that "[d]espite Mr. Bowen's obvious signs of

severe injury Dr. Goldberg negligently failed to fulfill his duty to Mr. Bowen and provide

medical care.  Indeed, Dr. Goldberg failed to even place his hands on Mr. Bowen to examine

him."  Pl. Mem. 1 at 11.  Under the facts alleged by Bowen, whether Dr. Goldberg violated his

duty of reasonable care turns only on the adequacy of Dr. Goldberg's treatment and examination

of Bowen's medical condition and the propriety of Dr. Goldberg's exercise of medical judgment.

Accord Pl. Mem. 2 at 7 ("All of Mr. Bowen's [sic] with Dr. Goldberg occurred in the WCJ, and

pertained to his medical care.").  For these reasons, Bowen's claims of negligence, "medical

negligence," and gross negligence against Dr. Goldberg in fact sound in medical malpractice.

As a result, the limitations period provided in N.Y. Gen. Mun. Law § 50-i(1)(c) applies to bar

these claims.

  The claim against Dr. Goldberg for negligent infliction of emotional distress, Compl.

¶ 98, is subject to the same statute of limitations period as the underlying malpractice claim

because it similarly arises out of Dr. Goldberg's failure to furnish proper medical treatment.  See O'Sullivan v. Kramer, 2007 WL 841013, at *2 (N.Y. Sup. Ct. Feb. 28, 2007) (applying medical malpractice statute of limitations period to claims of negligent infliction of emotional distress arising out of medical malpractice) (citing Broadnax v. Gonzalez, 2 N.Y.3d 148 (2004)).

Bowen argues that N.Y. Gen. Mun. Law § 50-i(1)(c) is inapplicable because Dr. Goldberg is an employee of NYMC, see Pl. Mem. 1 at 10, and because "contract claims sounding in tort have a three year statute of limitations," id. at 12.  Both of these arguments lack merit.  The applicability of N.Y. Gen. Mun. Law § 50-d does not turn on whether Dr. Goldberg was employed by an entity other than the municipality.  In fact, the statute expressly contemplates that it will apply to physicians who were not municipal employees inasmuch as it "deem[s]" all such physicians to be employees of the municipality for the purposes of that section.  N.Y. Gen. Mun. Law § 50-d(1).  Additionally, beyond the conclusory suggestion that Bowen has presented claims for breach of contract against Dr. Goldberg, Bowen does not present any theory on which his claims of "negligence, medical negligence, gross negligence, and negligent infliction of emotional distress," which he characterizes as "torts committed by . . . Goldberg," Compl. ¶ 101, would constitute claims for breach of contract rather than tort.[12]

The parties agree that Bowen's claims accrued on December 29, 2008.  See Cnty. Mem. at 13; Pl. Mem. 1 at 12.  Bowen filed his complaint more than one year and 90 days later on July 12, 2011.  Bowen's claims against Dr. Goldberg contained in paragraphs 96 and 98 of the amended complaint are therefore time-barred.

---

[12] If the argument that Bowen's allegations against Dr. Goldberg state a claim for breach of contract is related to the theory that Bowen is a third-party beneficiary to a contract between Westchester County and NYMC, see Pl. Mem. 2 at 6–7, this argument fails because the breach of contract claim against NYMC fails, see Section III.G below.

      F.     <u>Claims of Respondeat Superior Liability Against NYMC</u>

Bowen alleges that NYMC is derivatively liable for "all torts committed by its employee, Goldberg, as he was at all times engaged generally in the business of NYMC or his acts may be reasonably said to be necessary or incidental to said employment."  Compl. ¶ 101; <u>see also</u> Pl. Mem. 2 at 7–8.  Because the claims of negligence, "medical negligence," gross negligence, and negligent infliction of emotional distress against Dr. Goldberg are time-barred, NYMC cannot be vicariously liable for any such torts committed by Dr. Goldberg.

      G.     <u>Claim of Breach of Contract Against NYMC</u>

Bowen alleges that NYMC is liable to him for breaching a contract between Westchester County and NYMC under which NYMC was to provide medical treatment to inmates at the WCJ.  <u>See</u> Compl. ¶¶ 102–03.  Bowen was not a signatory to this contract.  <u>Id.</u> ¶ 103.  Bowen argues that he is a third-party beneficiary to the contract between NYMC and Westchester County and has standing to sue for NYMC's alleged breach of that agreement.  <u>See</u> Pl. Mem. 2 at 6–7.

Under New York law, "[a] third party seeking to recover on a contract must establish that a binding contract exists between other parties; that this contract was intended for his benefit; and that the benefit to him was direct rather than incidental."  <u>Internationale Nederlanden (U.S.) Capital Corp. v. Bankers Trust Co.</u>, 261 A.D.2d 117, 123 (1st Dep't 1999) (citation omitted); <u>accord</u> <u>Cal. Pub. Emps.' Ret. Sys. v. Shearman & Sterling</u>, 95 N.Y.2d 427, 434–35 (2000).  The link between the benefit conferred and the third party must be sufficiently immediate that it "indicate[s] the assumption by the contracting parties of a duty to compensate [the third-party beneficiary] if the benefit is lost."  <u>Alicea v. City of New York</u>, 145 A.D.2d 315, 317 (1st Dep't 1988) (quoting <u>Burns Jackson Miller Summit & Spitzer v. Lindner</u>, 59 N.Y.2d 314, 336 (1983)).

21

It seems unlikely that the contract between NYMC and WCJ would have contemplated that NYMC would assume a duty to compensate inmates if NYMC failed to perform.  The relevant provisions of the contract, however, have not been alleged and thus the claim must dismissed simply for this reason.  Case law is clear that to state a breach of contract claim, the pleadings "must allege the provisions of the contract upon which the claim is based," <u>Atkinson v. Mobil Oil Corp.</u>, 205 A.D.2d 719, 720 (2d Dep't 1994) (citation omitted); <u>accord</u> <u>Abu Dhabi Commercial Bank v. Morgan Stanley & Co.</u>, 651 F. Supp. 2d 155, 183 (S.D.N.Y. 2009) ("[P]laintiff must provide specific allegations as to the agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue.") (citation and quotation marks omitted), and the defendant's acts or omissions constituting the breach, <u>see</u> <u>id.</u> at 183–84; <u>Pappas v. Tzolis</u>, 87 A.D.3d 889, 896 (1st Dep't 2011) ("The court also correctly dismissed the breach of contract cause of action because of plaintiffs' failure to allege specifically what the violation was."); <u>Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.</u>, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) ("[S]tating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract.") (citations omitted).

The only details included in the first amended complaint as to NYMC's obligations under the contract are that NYMC was required to "provide medical care and treatment to all inmates in custody of the Westchester County Jail," Compl. ¶ 103; <u>accord</u> <u>id.</u> ¶ 19 ("Westchester County entered into an exclusive written contract with NYMC for the provision of primary medical care services to inmates in the WCJ, from at least January 1, 2006 through July 25, 2010."), and that NYMC was "responsibl[e] [for] creating and implementing Westchester County policies and procedures regarding the provision of said medical care," <u>id.</u> ¶ 20.  While Bowen asserts

conclusorily that NYMC "breached said contract[]," id. ¶ 103, he does not specify the terms of the contract and does not explain how NYMC breached those terms.  Thus, the amended complaint fails to apprise the Court and the parties of the "transactions, occurrences, or series of transactions or occurrences, intended to be proved as well as the material elements of each cause of action or defense." Atkinson, 205 A.D.2d at 720 (citations, brackets, and quotation marks omitted).   This failure has rendered it impossible for the Court to determine whether NYMC assumed a duty in the contract to compensate Bowen.  Bowen's reference to a local law relating to such a contract, see Pl. Mem. 2 at 607, does not cure this problem for two reasons.  First, it refers to a contract with "Westchester County Health Care Corporation," not NYMC.  Id. Second, this law merely authorizes a contract and does not constitute the contract itself. Id.

Accordingly, Bowen has failed to state a third-party claim for breach of contract.

H.    Claims of Negligence Against NYMC

Bowen alleges that NYMC owed Bowen a duty to properly train and supervise Dr. Goldberg in his provision of medical care to Bowen and other inmates.[13]  Compl. ¶ 95.  Bowen alleges that NYMC breached this duty and that Bowen suffered damages as a result.  Id. ¶¶ 95, 99.

To state a claim under New York law for negligent supervision of an employee, a complaint must show:

---

[13] Bowen also alleges that NYMC owed Bowen a duty to "provide competent medical personnel to [Bowen]." Compl. ¶ 94.  In his opposition to NYMC's motion to dismiss, Bowen does not distinguish this duty from the duty to properly train and supervise Dr. Goldberg.  See Pl. Mem. 2 at 8.  Because Bowen does not argue the duties are independent of each other and because Bowen's theories of NYMC's liability under both alleged duties are apparently identical, the Court treats Bowen's assertion that NYMC breached a duty to provide Bowen with competent medical personnel as alleging that NYMC breached a duty to properly train and supervise Dr. Goldberg.

23

(1) the tortfeasor and defendant were in an employee-employer relationship; (2) the employer knew or should have known of the employee's propensity for the tortious conduct; and (3) the tort was committed on the employer's premises or with the employer's chattels.

Papelino v. Albany Coll. of Pharmacy of Union Univ., 633 F.3d 81, 94 (2d Cir. 2011) (citing Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004)); accord Batista v. City of New York, 2007 WL 2822211, at *9 (S.D.N.Y. Sept. 25, 2007) (citations and internal quotation marks omitted); Kenneth R. v. Roman Catholic Diocese of Brooklyn, 229 A.D.2d 159, 161 (2d Dep't), cert. denied, 522 U.S. 967 (1997). Knowledge of propensity is likewise required for claims of negligent retention and negligent training. See, e.g., Pinkney v. City of New York, 52 A.D.3d 242, 243 (1st Dep't 2008).

NYMC argues that it neither knew nor had reason to know that Dr. Goldberg may have had a propensity for committing the torts Dr. Goldberg allegedly committed. See NYMC Mem. at 16–17; NYMC Reply at 6–8. In response, Bowen, Pl. Mem. 2 at 8, points only to the following facts: (1) NYMC was aware of allegations contained in the complaint filed in Jones v. Westchester County Department of Corrections Medical Department, 07 Civ. 3019 (S.D.N.Y.), that an inmate at the WCJ was denied surgery, see Compl. ¶¶ 25–26; (2) that the DOJ informed NYMC of the preliminary findings of its investigation, id. ¶ 31; (3) that "Goldberg's job description did not require any knowledge of the civil rights of institutionalized persons to adequate medical care or treatment," id. ¶ 23; and (4) that NYMC did not provide Dr. Goldberg with training "in how to respond to the grossly negligent, reckless or intentional denial of medical care to inmates of the WCJ by Westchester County employees or agents," id. ¶ 24. As Dr. Goldberg is not alleged to have been mentioned in either the Jones complaint or DOJ's preliminary findings, the first and second allegations do not show any knowledge of Dr.

24

Goldberg's propensity to commit the torts alleged.  As for the third and fourth allegations, they are simply irrelevant to this question.

Bowen argues that "[t]he allegation that Goldberg stood idly by and watched an inmate with a severe and bleeding head injury be maliciously beaten by a correction officer is prima facie evidence of a failure to train, gross negligence, recklessness, and smacks of intentional wrongdoing."  Pl. Mem. 2 at 8.  The cited allegation, however, does not show that Dr. Goldberg was predisposed to breaching any duty to provide medical care, or that NYMC knew or should have known as much, even assuming Dr. Goldberg was so predisposed.

I.      Claim of Gross Negligence Against NYMC

To state a claim for gross negligence in New York, a plaintiff must demonstrate that the defendant owed the plaintiff a duty and the defendant failed to exercise "even slight care" in the discharge of that duty.  Food Pageant, Inc. v. Consol. Edison Co., 54 N.Y.2d 167, 172 (1981). That is, "a party's conduct must smack of intentional wrongdoing or evince a reckless indifference to the rights of others."  Ryan v. IM Kapco, Inc., 88 A.D.3d 682, 683 (2d Dep't 2011) (citations, brackets, and quotations omitted).  Because Bowen has failed to show that NYMC acted negligently in training and supervising Dr. Goldberg, Bowen's pleadings likewise fail to state a claim for gross negligence in the discharge of those duties against NYMC.

IV.     CONCLUSION

For the foregoing reasons, NYMC's motion to dismiss (Docket # 30) should be granted in its entirety.  The County Defendants' motion to dismiss (Docket # 35) should be granted except as to the claim against Pamela Williams for failing to intervene.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Jesse M. Furman, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Furman.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: August 29, 2012
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge