UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  08/04/2014
```

------------------------------------------------------------------------X
:
JAMES R. BOWEN,                                     :
:
                        Plaintiff,                  :                11-CV-4799 (JMF)
:
            -v-                                      :               OPINION AND ORDER
:
CAPT. ROBERT PATRICK et al.,                        :
:
                        Defendants.                 :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiff James R. Bowen brings this action arising out of an incident that occurred during

his detention at the Westchester County Jail.  After earlier motion practice and the voluntary

withdrawal of certain claims, Plaintiff's remaining claims, brought pursuant to Title 42, United

States Code, Section 1983, are an excessive force claim against Defendant Robert Patrick and

failure-to-intervene claims against Defendants Alvin Rogers, Anthony SanMarco, and Pamela

Williams.  Defendants now move for summary judgment on those claims.  As explained below,

the motion is GRANTED with respect to the claim against Defendant SanMarco but DENIED

with respect to the claims against Defendants Patrick, Rogers, and Williams.

                                    **BACKGROUND**

       The following facts, taken from the Amended Complaint and the admissible materials

submitted by the parties, are viewed in the light most favorable to Plaintiff, as he is the non-

moving party.  *See, e.g.*, *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 157-58 (2d Cir. 2012).

       Plaintiff James Bowen was a pretrial detainee at the Westchester County Jail (the "WCJ")

from December 22, 2008, through January 14, 2009.  (*See* Statement Material Facts Pursuant

Local Rule 56.1 Submitted Supp. Defs.' Mot. Summ. J ("Defs.' Rule 56.1 Statement") (Docket No. 75) ¶ 13; Pl.'s Response to Defs.' Rule 56.1 Statement & Counterstatement ("Pl.'s Rule 56.1 Statement") (Docket No. 88) § A ¶ 13).  On December 29, 2008, at approximately 11:22 a.m., while housed in the J2 dorm of the WCJ, Plaintiff fell from his top bunk onto the floor, footage of which was captured from afar by WCJ surveillance cameras.  (Defs.' Rule 56.1 Statement ¶ 14; Pl.'s Rule 56.1 Statement § A ¶ 14; *see also* Defs.' Rule 56.1 Statement, Ex. G).  Plaintiff remained on the floor for approximately ten minutes, at which point video footage shows him being wheeled out of the dorm in a wheelchair.  (Defs.' Rule 56.1 Statement, Ex. G).

Plaintiff alleges that, following the fall, while he was on the floor, Defendant Robert Patrick assaulted him.  (First Am. Compl. (Docket No. 29) ("Am. Compl.") ¶ 54).  Specifically, the Amended Complaint alleges that Patrick, a Captain at the WCJ, applied a "wrist hold" to Plaintiff and "inflicted additional pain by twisting [Plaintiff's] wrist," and "repeatedly kicked [Plaintiff's] injured back with a booted foot."  (Am. Compl. ¶¶ 14, 54).  In addition, the Amended Complaint alleges that a number of other WCJ officers, including Defendants Rogers, SanMarco, and Williams observed the assault and either failed to intervene or did so inadequately.  (Am. Compl. ¶¶ 15-16, 56, 60-61).

On July 12, 2011, Plaintiff initiated this lawsuit (Docket No. 1), and on August 8, 2011, Judge Richard J. Holwell, to whom the case was previously assigned, accepted the case as related to another case that was before him, *Dilworth et al. v. Goldberg et al.*, 10-CV-2224 (*see* 11-CV-4799, Minute Entry, August 1, 2011).[1]  On November 21, 2011, Plaintiff filed an Amended Complaint, asserting claims against New York Medical College ("NYMC"), Westchester County, the Westchester County Health Care Corporation, and employees of

---

[1]     Both the instant case and the *Dilworth* case were reassigned to the undersigned on April 16, 2012.  (Docket No. 44; 10-CV-2224, Docket No. 328).

Westchester County.  (Docket No. 29).  On March 5, 2012, Plaintiff voluntarily dismissed his claims against the Westchester County Health Care Corporation, his claims based on *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and his Section 1983 conspiracy claim against Defendant Warden Charles Turner.  (Docket No. 39).  In addition, following motions to dismiss filed by NYMC and the Westchester County Defendants (Docket Nos. 30, 35), Magistrate Judge Gorenstein, to whom this action was referred for a Report and Recommendation, recommended dismissal of all claims asserted against NYMC and certain claims brought against the Westchester County Defendants.  (Docket No. 45).  This Court adopted that Report and Recommendation in full.  (Docket No. 46).

At that point, the remaining claims in this action included a Section 1983 excessive-force claim against Defendant Patrick, and Section 1983 failure-to-intervene claims against Defendants Rogers, SanMarco, Williams, and others.  (*See* Mem. Law. Supp. Defs.' Mot. Summ. J. ("Defs.' Mem.") (Docket No. 76) 1 n.1.).  On January 13, 2014, all the remaining Defendants filed the instant motion for summary judgment.  (Docket No. 74).  Although Plaintiff's opposition to the motion was due on January 27, 2014, Plaintiff failed to submit opposition by that deadline, and requested an extension of time two days later.  (Docket No. 77).  The Court granted Plaintiff an extension *nunc pro tunc* to February 7, 2014.  (Docket No. 78).  On February 5, 2014, Plaintiff requested an additional extension to February 14, 2014, which the Court granted on consent.  (Docket No. 80, 81).  Plaintiff requested and the Court granted one further extension, extending the deadline to February 24, 2014.  (Docket Nos. 82, 83).

Remarkably, Plaintiff still failed to file the opposition papers on time, finally opposing Defendants' motion on March 3, 2014.  (Docket Nos. 86-88).[2]  In those papers, Plaintiff withdrew his failure-to-intervene claims against all Defendants other than Rogers, SanMarco, and Williams.  (*See* Pl.'s Response Defs.' Rule 56.1 Statement and Counterstatement (Docket No. 88) § B, ¶ 8 ("Plaintiff is pursuing only his claim of use of excessive force against Capt. Patrick (Count I), and his claim for [sic] failure to intervene claim against Sgt. Rogers, Sgt. SanMarco, and C.O. Williams (Count II).").  Accordingly, the only remaining claims are the excessive-force claim against Defendant Patrick and the failure-to-intervene claims against those three Defendants.  Those claims are the object of the instant motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

The summary judgment standard is well established.  Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  An issue of fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of

---

[2]     After Plaintiff submitted his opposition papers, the Court ordered him to show cause why the Court should not strike the opposition memoranda or impose other sanctions, and required Plaintiff's counsel to submit an affidavit explaining the tardiness of his submissions and his failure to seek the Court's leave to file them late.  (Docket No. 90).  Plaintiff's counsel's explanation was essentially that he had misread a Court Order and was overwhelmed by work on other matters.  (*See* Docket No. 91).  Notwithstanding that unsatisfactory explanation, the Court ultimately declined to strike the submissions or impose other sanctions against Plaintiff or his counsel, instead warning Plaintiff that continuing failures to abide by the Court's deadlines "will result in sanctions being imposed on Plaintiff, Plaintiff's counsel, or both." (Docket No. 92).

demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

## DISCUSSION

As noted, Plaintiff's claims are brought pursuant to Section 1983. Section 1983 provides a civil cause of action against a person who, acting under the color of state law, deprives another person of any of the rights, privileges, or immunities secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

Plaintiff claims that Defendant Patrick violated his constitutional rights by using excessive force against him, and that Defendants Williams, Rogers, and SanMarco violated his rights by failing to intervene in or prevent Defendant Patrick's constitutional violation.

**A.      The Excessive Force Claim**

The Court first turns to Plaintiff's excessive force claim against Patrick.  As a pretrial detainee, Plaintiff's excessive force claim is analyzed under the Due Process Clause of the Fourteenth Amendment, although the analysis is practically the same as is used to analyze claims by convicted inmates under the Eighth Amendment.  *See Tavares v. City of New York*, No. 08-CV-3782 (PAE), 2011 WL 5877548, at *3 (S.D.N.Y. Nov. 23, 2011).  To establish an excessive-force claim, Plaintiff must satisfy a two-part inquiry, focusing on the objective and subjective nature of the conduct at issue.  First, Plaintiff must show that the use of force is "objectively sufficiently serious or harmful enough" to be actionable.  *United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999); *see also Cunningham v. Rodriguez*, No. 01-CV-1123 (DC), 2002 WL 31654960, at *4 (S.D.N.Y. Nov. 22, 2002).  Second, Plaintiff must establish that Defendant Patrick acted with a "sufficiently culpable state of mind, shown by actions characterized by wantonness." *Walsh*, 194 F.3d at 50 (citations and internal quotation marks omitted).

Defendants argue that summary judgment in favor of Defendant Patrick is appropriate because the video of the incident "reveals in no uncertain terms that no one assaulted Bowen." (Defs.' Mem. 2).  Having reviewed the video, however, the Court finds the evidence not quite so conclusive.  The video certainly does not show, as Plaintiff claims, Captain Patrick (or anyone else) "deliver[ing] several kicks to Mr. Bowen" (Pl.'s Mem. Law Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n Mem.") (Docket No. 86) 6), but the floor between the bunk beds — where the kicks are alleged to have been delivered — is so obscured that neither can the Court conclude as

a matter of law that no assault occurred.  Moreover, Anthony Dilworth, the plaintiff in the related *Dilworth* action, clearly testified that he observed Captain Patrick kicking Bowen at least two times, resulting in bleeding from Bowen's head.  (Defs.' Rule 56.1 Statement, Ex. O ("Dilworth Dep.") 186:4-10, 186:25-187:8, 187:24-188:2).  Drawing all reasonable inferences in Plaintiff's favor, then, there are material disputes of fact with regard to whether Captain Patrick used excessive force in violation of the Due Process Clause of the Fourteenth Amendment.  *See, e.g.*, *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 432 (S.D.N.Y. 2012).

To be sure, Defendants raise substantial questions about the credibility of Dilworth's testimony.  For instance, while the video footage does not show what occurred on the floor between the bunk beds, it does show the inmates gathered in the area near where Plaintiff fell, and none appears to react in any noticeable way, contrary to what one might expect had Patrick been assaulting Plaintiff.  In addition, at Plaintiff's deposition, he testified that he was kicked on his left side (Defs.' Rule 56.1 Statement, Ex. N ("Bowen Dep.") 32:24-25), but in a statement he wrote the day of the incident, Plaintiff indicated that he was kicked in his legs (Defs.' Rule 56.1 Statement, Ex. U), and Dilworth testified that Plaintiff was kicked "[u]p toward his head." (Dilworth Dep. 184:22).  Perhaps most tellingly, in the numerous sick-call requests that Plaintiff submitted relating to injuries he sustained during the incident, he never once mentions having been attacked, instead indicating that the "reason for request" was that he "fell off the top bunk" (Defs.' Rule 56.1 Statement, Exs. P, Q, R, S).  Such questions of credibility, however, are for the jury to decide at trial, not for the Court to decide on summary judgment.

Defendants also argue that summary judgment is warranted because Plaintiff suffered only a *de minimis* injury, but the Court is not persuaded.  (Defs.' Mem. 13; Reply Mem. Supp. Defs.' Mot. Summ. J. ("Defs.' Reply Mem.") (Docket No. 98) 7).  As the Supreme Court has

made clear, "the core judicial inquiry" for an excessive force claim is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (internal quotation marks omitted). The "absence of serious injury" is certainly not irrelevant to the excessive force inquiry, but "[a]n inmate who is gratuitously beaten by guards" — essentially, what Plaintiff alleges occurred here — "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id*. at 37-38 (internal quotation marks omitted); *see also Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."). Accordingly, the claim against Defendant Patrick survives.

**B.    The Failure-to-Intervene Claims**

The Court now turns to the failure-to-intervene claims against Defendants Rogers, Williams, and SanMarco. Even where an officer has not directly participated in the use of excessive force, "a correctional officer has an affirmative duty to intercede on behalf of an inmate when he witnesses a violation of that inmate's constitutional rights by his fellow officers." *Toliver v. City of New York*, No. 10-CV-5806 (SHS) (JCF), 2013 WL 6476791, at *3 (S.D.N.Y. Dec. 10, 2013) (internal quotation marks and alterations omitted), *report and recommendation adopted by* No. 10-CV-5806 (SHS), 2014 WL 549402 (S.D.N.Y. Feb. 11, 2014); *see also O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). Liability attaches, however, only if "(1) the officer [has] a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-*

*Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).  Defendants argue that summary judgment is warranted because the evidence establishes that neither Defendant Rogers nor Defendant Williams had an opportunity to intervene in the alleged assault, given the duration of the episode and the locations of the officers, and that Defendant SanMarco was absent altogether.  (Defs.' Mem. 16; Defs.' Reply Mem. 8).

In support of their argument with respect to Rogers and Williams, Defendants rely on *O'Neill*, 839 F.2d at 11.  In *O'Neill*, the Second Circuit set aside a jury verdict on a failure-to-intervene claim where the assault that the defendant allegedly failed to prevent entailed "[t]hree blows [that] were struck in such rapid succession that [the defendant] had no realistic opportunity to prevent them."  *Id.*  Here, by contrast, the duration of the alleged assault is unclear, and the video shows a group of prison officials — one of which was presumably Officer Patrick — standing next to Plaintiff's bed for over five minutes.  That is certainly enough time for an officer observing an assault to intervene, and Dilworth's testimony suggests that both Defendants Rogers and Williams were in the J2 dorm when the assault occurred.  (Dilworth Dep. 185:3-4; 191:11-13).  Of course, whether the assault did, in fact, occur is in dispute, and the Court has already expressed its skepticism regarding Plaintiff's claim on that score.  Construing the evidence in Plaintiff's favor, however, a jury could find that Defendants Rogers and Williams had a realistic opportunity to intervene in the assault, and failed to do so.  The claims against Defendants Rogers and Williams therefore survive as well.[3]

---

[3]     Qualified immunity does not, as Defendants argue, justify a grant of summary judgment in favor of Defendants Patrick, Rogers, and Williams.  (*See* Defs.' Mem. 18-19).  The defense of qualified immunity protects a government official only if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act.  *Dublin v. N.Y.C. Law Dep't*, No. 10-CV-2971 (LAP), 2012 WL 4471306, at *7 (S.D.N.Y. Sept. 26, 2012).  Assuming Plaintiff's account is true — that Patrick gratuitously assaulted Plaintiff while Rogers and Williams stood idly by — Defendants would plainly not be entitled qualified immunity.

The failure-to-intervene claim against Defendant SanMarco, however, must be dismissed. Simply put, there is no admissible evidence suggesting that SanMarco was in a position to prevent any assault that may have occurred.  To the contrary, SanMarco's sworn, notarized affidavit indicates that he was not on duty or present in the J2 dorm at the time the incident occurred, and that he began his shift that day at 1:00 p.m., approximately one-and-a-half hours after the alleged incident.  (Defs.' Rule 56.1 Statement, Ex. I).  Neither Dilworth's nor Bowen's deposition testimony indicates otherwise.  Plaintiff attempts to contradict that evidence by citing to the Third Amended Complaint in the *Dilworth* action, where Dilworth alleged that "SanMarco compelled Mr. Dilworth to watch a brutal physical assault by [Defendant] Patrick upon inmate James Bowen."  (Pl.'s Opp'n Mem. 5; *see also* Declaration Opp'n Defs.' Mot. Summ. J. (Docket No. 87), Ex. 5 ¶ 80(a)).  But that allegation fails to provide the necessary detail to support a failure-to-intervene claim, such as where SanMarco was positioned at the time of the incident. Moreover, as the Court explained in an Opinion and Order dated August 1, 2014, in *Dilworth*, the Third Amended Complaint in that action is not admissible evidence for purposes of opposing a summary judgment motion, as it is not signed by Anthony Dilworth.  Because there is no evidence indicating that Defendant SanMarco was present at the time of the incident, then, the failure-to-intervene claim against him must be and is dismissed.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED with respect to Defendant SanMarco but DENIED with respect to Defendants Patrick, Rogers, and Williams.  In addition, the claims against all other Defendants are deemed withdrawn.

Accordingly, the Clerk of Court is directed to terminate Docket No. 74 and to terminate Defendants SanMarco, Allen, Colello, Green, Rosini, as well as the unidentified John Doe and Emergency Response Team Member Defendants.

Within **thirty days** of this Opinion and Order, the parties shall submit to the Court for its approval a Joint Pretrial Order prepared in accordance with the Court's Individual Rules and Practices and Fed. R. Civ. P. 26(a)(3).  The parties shall also follow Paragraph 5 of the Court's Individual Rules and Practices, which identifies submissions that must be made at or before the time of the Joint Pretrial Order, including any motions *in limine*.

If this action is to be tried before a jury, joint requests to charge, joint proposed verdict forms, and joint proposed *voir dire* questions shall be filed on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices. Jury instructions may not be submitted after the Joint Pretrial Order due date, unless they meet the standard of Fed. R. Civ. P. 51(a)(2)(A).  If this action is to be tried to the Court, proposed findings of fact and conclusions of law shall be filed on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices.  Unless the Court orders otherwise for good cause shown, the parties shall be ready for trial two weeks after the Joint Pretrial Order is filed.

Finally, if the parties are interested in a settlement conference, they shall contact the chambers of Magistrate Judge Gorenstein immediately and so advise the Court by joint letter.

SO ORDERED.

Date:   August 4, 2014
        New York, New York

_____
JESSE M. FURMAN
United States District Judge